IN RE DISINTERMENT OF J. BASIL TOW.

No. 48098.

(Reported in 53 N.W.2d 283)

MAY 6, 1952.

Mote & Wilson and Haupert & Robertson, all of Marshalltown, for appellant.

Boardman, Cartwright & Druker, of Marshalltown, for appellee.

SMITH, J.—This proceeding originated with the filing of an "application for disinterment." It was filed in the office of the district court clerk by or on behalf of Hartford Accident & Indemnity Company. It sought disinterment of the body of one J. Basil Tow who had died about three months earlier. The purpose was to hold an autopsy on the cause of death.

Decedent was at time of his death an employee of LeGrand Elevator Company. His widow had promptly filed her application for arbitration with the Industrial Commissioner of Iowa seeking award of compensation for his death under the Iowa Workmen's Compensation law.

The employer and its insurance carrier, the applicant herein, answered her application for arbitration denying that decedent's death resulted from any injury arising out of and in the course of his employment. No hearing has yet been held before the industrial commissioner or his deputy. Of course the question of the widow's right to compensation has not been and could not be before the district court except by appeal from a commissioner's award.

Back of the present controversy is the initial disagreement over the cause of Mr. Tow's death. The widow claims he died from tetanus caused by an injury suffered in the course of his employment a few days earlier. The insurance carrier, applicant here, thinks his death was due to encephalitis which had no causal connection with his employment. It is urged that an autopsy performed upon decedent's body "may make possible an accurate determination of the cause of death * * * and consequently a fair and accurate determination as to whether [his] death had any causal connection with his employment."

The surviving spouse resists the application for disinterment, insists the cause of death has been determined by competent medical testimony (death certificate) and denies the proceeding is maintainable under chapter 141, Iowa Code, 1950, specifically sections 141.22, 141.24 and 141.25.

A hearing was had at which medical testimony was produced, after which the trial court ordered disinterment. This appeal by the surviving spouse is from that order.

I. We are of course not concerned here with the question of the cause of Mr. Tow's death. That was not within the

district court's jurisdiction, nor is it within ours. Furthermore, we are not concerned with the correctness of the trial court's factual findings under the testimony adduced at the hearing, justifying the order of disinterment. This is not an appeal involving a review de novo. It is rather a review somewhat in the nature of certiorari. It questions the court's power to act and as we view it we have one question to determine: Do the facts bring the application within the purview of the statute under which the proceeding is sought to be maintained? That is the sole problem presented.

II. Two statutory sections are especially involved in the discussion: (1) Code section 141.24 which provides "An application for a court order for a disinterment for the purpose of holding an autopsy may be made by * * * any attorney representing any party in any criminal or *civil proceedings*"; and (2) Code section 141.25 which says "No application for a permit to disinter for the purpose of holding an autopsy shall be granted by the court * * * except under circumstances such as to cause the belief that someone is criminally or *civilly liable* for such death." We have italicized the key words over which the debate rages. The sections seem never to have been judicially construed.

Do the attorneys who made this application on behalf of the insurance carrier represent a *party* in a "civil proceeding"? And are the circumstances such as to cause the belief that someone is "civilly liable" for Mr. Tow's death?

Appellant argues that, since the application is not made by or on behalf of the employer, the attorneys who filed it do not represent anyone who held any relationship with or responsibility toward decedent. From that premise the conclusion is reached that the application was not made by an "attorney representing *any party*." Both premise and conclusion are open to question.

▇▇▇▇▇▇ The employee, though not a party to the insurance contract, was nevertheless a member of a class for whose benefit the contract was made. There is a relationship between him and the insurer-carrier. One for whose benefit a contract is entered into may maintain action to enforce his rights under it. Venz v. State Auto. Ins. Assn., 217 Iowa 662, 666, 251 N.W. 27. The rule is unquestioned in this state. It is unnecessary that the

beneficiary assent to the contract or even that he have knowledge of it. Rodgers v. Reinking, 205 Iowa 1311, 1319, 217 N.W. 441.

Furthermore, the statute merely requires that the attorney filing the application represent a "party in a civil proceeding." There is no requirement that the "party" hold any position of relationship to decedent.

The whole contention has a practical answer here, however. Appellant, on whose behalf it is made, herself named both the employer and the insurance carrier as parties defendant when she filed her application for arbitration. She asked that both defendants "be required to answer this application for arbitration."

In doing this her attorneys followed standard procedure. Code sections 87.9, 87.10 and 87.24, Iowa Code, 1950, seem to sanction it. We have no doubt the insurance carrier was a "party" in the compensation proceedings, within the meaning of the statute.

III. We are equally certain the *proceeding* before the industrial commissioner, with right of review on error to the district court, is a "civil proceeding" within the meaning of Code section 141.24. We do not understand appellant here argues to the contrary.

It is urged however that since the industrial commissioner has exclusive jurisdiction of the compensation case this proceeding in the district court constitutes some sort of "interference" with that exclusive jurisdiction.

We do not so view it. It invokes the exercise of a power not expressly granted to the commissioner (except for the recent legislation giving him some right to order autopsies in case of death from occupational disease. Code section 85A.19). It does not interfere with the compensation proceedings. It may or may not furnish evidence that will be helpful to the commissioner as a trier of fact, just as it might be helpful if the cause of death were the subject of investigation in any other civil, or in any criminal, proceeding.

IV. Nor are we impressed with the argument that because applicant's potential civil liability here for the death of the employee is contractual rather than tortious, applicant is not entitled to initiate this statutory procedure. "No application

\* \* \* shall be granted \* \* \* except under circumstances such as to cause the belief that someone is criminally or civilly liable for such death." Code section 141.25.

Appellant argues: "No contention is made in this case that *someone* caused the death of J. Basil Tow. This section obviously is designed for the purpose of determining the cause of death to relieve or establish the liability of *someone* accused [sic] of being civilly liable therefor." And again: "Though *something*, to wit an injury causing tetanus, resulting in death, is the basis of the claim filed with the industrial commissioner, it is not claimed that *someone* caused decedent's death \* \* \*."

The argument assumes there must be some belief of tortious liability—that someone must be *"accused"* not merely of being civilly liable but of having committed some criminal or tortious act that caused the death and made him so liable. The statute does not say or imply this. A belief of civil *liability* only is required.

Nor is it important (if true) that the liability of the insurance carrier is to the employer and not directly to the employee or his surviving spouse or dependents. The insurer cannot be heard to deny liability once it is adjudicated against the insured employer. Code section 87.10. We conclude a logical analysis of the pertinent statutes leads inevitably to the conclusion reached by the trial court as to the power they give the court under this record.

We have already pointed out that the proceeding is not triable de novo on appeal. With the wisdom or correctness of the trial court's decision we have no concern except to assure ourselves that there is ample competent evidence to support it. This we have done. It is not necessary nor would it be helpful to set out the testimony. It is sufficient to show there is reasonable likelihood that an autopsy would either confirm or negative the claim of the insurer-applicant.

We are not called on to review the eloquence of this and other courts in decisions honoring and respecting the universal sentiments and feelings of mankind as to their dead. Our statute has carefully defined the limits within which our legislature thought those sentiments should be disregarded. We have already said in effect that the limits were not disregarded here.

The result reached has the advantage that its effect is to broaden rather than narrow the search for truth as to the cause of death —a tendency to reveal rather than conceal possible facts bearing on the respective rights of the parties.

The order of the trial court is affirmed.—Affirmed.

OLIVER, WENNERSTRUM, MANTZ, and GARFIELD, JJ., concur.